UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RON CRAIK,                   ) | |
|                              ) | |
|     Plaintiff,     ) | Case No. 1:13-cv-00874 |
|   v.                    ) | |
|                              ) | Judge John W. Darrah |
| THE BOEING COMPANY,          ) | |
|                              ) | |
|     Defendant.    ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ron Craik has brought this action for patent infringement against Defendant The Boeing Company ("Boeing"). Boeing has filed a Motion to Transfer Pursuant to 28 U.S.C. § 1404(a), to the Western District of Washington. The matter has been fully briefed and is now ripe for ruling.

## BACKGROUND

This is a patent infringement action based on three patents owned by Craik and relating to the inspection and maintenance of aircraft equipment. Craik is a resident of Calgary, Alberta, Canada; and his company, Safe Air Solutions, is also based in Calgary. (Compl. ¶¶ 4-5.) According to the Complaint, Craik had interacted with Boeing on two occasions prior to this lawsuit: (1) Boeing invited Craik to attend Boeing's worldwide airline industry conference in Paris, France, in June 2005; and (2) Boeing sought Craik's advice in 2008 for how best to craft a comprehensive aircraft maintenance plan but soon after decided against conducting any formal business relations with Craik. (*Id.* ¶¶ 5-6.)

In 2012, Boeing announced that it had developed, tested and validated a system to improve airline maintenance for commercial airplanes, which included the airline industry's first comprehensive radio frequency identification device ("RFID") and contact memory button

("CMB") technology.  (*Id.* ¶ 7.)  Craik alleges that Boeing's RFID and CMB technologies directly infringe Craik's three patents that were issued by the U.S. Patent and Trademark Office between 2006 and 2012.  (*Id.* ¶¶ 9-11.)  Craik also charges Boeing with actively inducing the infringement of one of the three patents.  (*Id.* ¶¶ 12-14.)  The patents are method claims and do not cover a particular apparatus or system.

Boeing's Commercial Aviation Services division, subsumed within its Commercial Airplanes business unit, was solely responsible for the work performed on the RFID system at issue.  (Def. Mot. at 3.)  Both of those Boeing entities are headquartered in Seattle, Washington; furthermore, all Boeing employees who ever participated in the RFID program live and work in Seattle or in the nearby suburb of Renton.  (*Id.*)  After developing the RFID system, Boeing tested the system on Boeing airplanes, first, in Victorville, California; then in Phoenix, Arizona; then in Los Angeles, California; and lastly in the greater Seattle area.  Test documents, data, and equipment were all returned to the Seattle Boeing offices at the conclusion of the testing.  (*Id.* at 3-4.)  The most significant testing done by Boeing was the temporary installation of the RFID system on three airplanes owned by the Seattle-based airline Alaska Airlines.  (*Id.* at 5.)  With regards to this testing, all related equipment and information and all persons who participated in the testing and have knowledge of the testing were and are currently located in and around Seattle.[1]  (*Id.* at 5-6.)  Fujitsu Limited (Fujitsu), headquartered in Tokyo, Japan,[2] and AeroInfo Systems (AeroInfo), a Boeing subsidiary headquartered in Richmond, British Columbia, Canada

---

[1] Boeing maintains that no RFID testing was conducted outside Seattle or the West Coast, which includes no testing done in Illinois.  (*Id.* at 6.)

[2] While at least twelve (12) Fujitsu employees who worked on the RFID system were based in Tokyo, Japan, three (3) additional Fujitsu employees who contributed to the development of the RFID system were located directly in Seattle.  (*Id.* at 5.)

(approximately 120 miles north of Seattle), both assisted in the development and testing of the RFID system.[3]  (*Id.*)

## LEGAL STANDARD

Boeing has moved to transfer this matter from the Northern District of Illinois (Chicago, IL) to the Western District of Washington (Seattle, WA) pursuant to 28 U.S.C. § 1404(a), which states, in pertinent part, that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."  Thus, the statutory requirements for granting a motion to transfer venue are present when:  (1) venue is proper in both the transferor and transferee courts; (2) a transfer will better serve the convenience of the parties and the witnesses; and (3) a transfer will better serve the interest of justice.  28 U.S.C. § 1404(a); *see Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986).  The moving party bears the burden of persuasion, and it is a considerable burden.  Transferring to the movant's desired venue must be *clearly* more convenient than remaining in the Craik's initial choice of venue.  *Body Sci. LLC v. Boston Sci. Corp.*, 846 F. Supp. 2d 980, 991 (N.D. Ill. 2012) (citing *Coffey*, 796 F.2d at 219-20).  Adjudication of a motion to transfer is "committed to the sound discretion of the trial judge."  *Id.* (quoting *Coffey*, 796 F.2d at 219).  Consequently, a trial judge will decide a motion to transfer on a case-by-case basis, considering all relevant contextual circumstances within the appropriate statutory framework and making any factual findings that are necessary for determining venue

---

[3] More specifically, Fujitsu was responsible for the software development of the RFID technology in accordance with Boeing's specifications.  Subsequently, AeroInfo validated and tested the basic functionality of the system delivered by Fujitsu, retaining all test data, documents, and equipment in its Richmond, B.C. office.  (*Id.*)

issues. *Id.* (citing 28 U.S.C. § 1404(a) and *In re LimitNone, LLC*, 551 F.3d 572, 577 (7th Cir. 2008)).

## ANALYSIS

Boeing contends that it has met its burden of demonstrating that transfer to the Western District of Washington is clearly more convenient than for this matter to remain in the Northern District of Illinois. Craik challenges the sufficiency of Boeing's argument and counters that this action should not be transferred.

### *Venue*

The first factor to consider is venue. Boeing admits that venue is proper in both districts. Craik provides an extensive report on Boeing's history and presence in Chicago in order to illustrate that venue is proper in the Northern District of Illinois; however, Craik provides no reason why venue is *not* proper in the Western District of Washington.

Patent infringement actions "may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Consequently, it is clear that venue is proper in both districts in this discussion for purposes of satisfying the first statutory element of 28 U.S.C. § 1404(a).

### *Convenience for the Parties and the Witnesses*

The convenience of transferring forums for both the parties and the witnesses is heavily contested by the parties; indeed, convenience is the most important statutory component of a transfer analysis. *Body Sci.*, 846 F. Supp. 2d at 992 (citations omitted). In weighing the convenience of one forum versus another, courts in this district consider five factors:

4

> (1) the plaintiff's choice of forum; (2) the *situs* of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums.

*Id.* (citing *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010)). Each of these factors is addressed below.

Plaintiff's Choice of Forum

A district court grants an automatic degree of deference to a plaintiff's chosen forum for filing a suit such that "unless the balance strongly favors transfer, the plaintiff's choice of forum should not be disturbed." *Bousis v. Marriott Int'l, Inc.*, 47 F. Supp. 2d 1004, 1006 (N.D. Ill. 1999) (citing *Warshawsky & Co. v. Arcata Nat'l Corp.*, 552 F.2d 1257, 1259 (7th Cir. 1977)). As essential as the plaintiff's choice of forum is, it is not absolute; and it may be neutralized as a factor weighing against transfer. *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000) (citation omitted). For example, a plaintiff's choice of forum is entitled to less deference when the forum is not the plaintiff's home or residence. *Moore v. Motor Coach Indus.*, 487 F. Supp. 2d 1003, 1007 (N.D. Ill. 2007). Furthermore, less deference is given "when another forum has a stronger relationship to the dispute or when the forum of plaintiff's choice has no significant connection to the *situs* of material events." *Id.* (citing *Chicago, Rock Island & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955)).

In this case, Craik's choice of forum is afforded less deference. Both Craik and his business, Safe Air Solution, are Canadian residents and have no apparent connection to the Northern District of Illinois. Thus, this factor weighs only slightly against transfer.

### *Situs* of Material Events

The next factor to consider is the *situs* of material events. Craik correctly notes that some courts in this district, including this one, have considered this factor to be less important in a patent case because the trier of fact determines patent infringement by comparing the alleged infringing device with the language of the claims. *See, e.g., Kolcraft Enters., Inc. v. Chicco USA, Inc.*, No. 09 C 3339, 2009 U.S. Dist. LEXIS 101605, at * 8 (N.D.Ill. Oct. 23, 2009); *Medi USA v. Jobst Inst., Inc.*, 791 F. Supp. 208, 210 (N.D. Ill. 1992); *Unomedical A/S v. Smiths Med. MD, Inc.*, No. 09-cv-4375, 2010 WL 2680144, at *2 (N.D. Ill. June 30, 2010) (J. Darrah) (finding that because the defendant sold the allegedly infringing product in Illinois, coupled with the fact that patent infringement cases generally do not revolve around a particular *situs* of events, this factor did not weigh in favor of transfer).

However, as the district court noted in *ORD Structure Innovations, LLC v. Oracle Corp.*, No. 11 C 3307, 2011 WL 4435667, at *2 (N.D. Ill. Sep. 22, 2011), the Federal Circuit has continued to consider the location that the allegedly infringing products were researched, developed and tested when considering this factor. *See In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (transferring case to Northern District of California because research and development of the infringing products and "[a]ll decisions regarding marketing, sales, and pricing" occurred there). Finding the Federal Circuit authority to be persuasive, the *ORD Structure* court found that the *situs* of material events factor weighed slightly in favor of transfer to the Northern District of California where the allegedly infringing products were primarily developed. 2011 WL 4435667, at *2. Likewise, other decisions in this district have accorded weight to the actual physical location of events or materials pertinent to the named defendant and

6

the particular accused infringing activities.  *See, e.g.*, *Addiction & Detoxification Inst., LLC v. Rapid Drug Detox Ctr.*, No. 11-cv-7992, 2013 WL 951115, at *2-3 (N.D. Ill. Mar. 11, 2013); *Body Sci.*, 846 F. Supp. 2d at 993-94.

In this case, the development, testing, and implementation of the RFID System was done in the following locations:  (1) in or around Seattle; (2) by Boeing at other locations in the Western United States (Victorville, California; Phoenix, Arizona; and Los Angeles, California) after which Boeing brought the documents, data, and equipment back to Seattle; or (3) at Fujitsu's facilities in Tokyo, Japan, or AeroInfo's facilities near Vancouver, British Columbia. (Def.'s Mot. at 11.)  Craik does not argue that the allegedly infringing technology has any connection to Illinois; rather, he focuses on the fact that Boeing's headquarters and "overall management and decision making" are in Chicago but does not contend that there were any actual directives from Chicago Boeing executives to the specific branch of Boeing in Seattle responsible for the alleged patent infringement.

The patent-in-suit contains only method claims; it can only be infringed when someone practices every step of the method.  In this case, that would require someone conducting maintenance and inspection with the RDIF system.  However, this has not occurred because Boeing has not sold its RDIF system.  (Def.'s Mot. Exh. 1 (Coop. Decl.) ¶ 30).  Craig therefore claims that Boeing's *testing* of the RDIF system is direct infringement by the accused system. (Def.'s Mot. Exh. 2 (Das Decl.) ¶ 2.)   All evidence relating to and witnesses knowledgeable about Boeing's testing of the RFID system are located in Seattle.

It appears that the allegedly infringing product was primarily developed and tested in Seattle or in locations much closer to Seattle than Chicago.  Considering the above-mentioned Federal Circuit authority on this issue, this factor weighs slightly in favor of transfer.

Ease of Access to Sources of Proof

All pertinent evidence in this matter is, similarly to the *situs* of material events, located in Seattle or somewhere on the West Coast relatively close to Seattle.  There are substantial amounts of electronic documents and data in this case that are located in or closer to Seattle.  There is also substantial physical evidence, such as the test systems for the RFID system and the handheld devices used in those tests, that is located in Seattle and cannot be converted into an electronically transferable format.  Both parties recognize that in this computerized era of litigation, parties are no longer unduly burdened by the prospect of transferring mass amounts of electronic data and information.  *Body Sci.*, 846 F. Supp. 2d at 995 (quoting *Unomedical*, 2010 WL 2680144 at *2).  In terms of electronic sources of proof, this factor minimally favors transfer.  However, the location of and ease of access to physical evidence is accorded more weight.  *See, e.g.*, *Lewis v. Grote Indus.*, 841 F. Supp. 2d 1049, 1053-54 (N.D. Ill. 2012) (siding with transfer where physical evidence was not as readily transferable as electronically-based materials and was more easily accessible in the transferee forum).

Because of the overwhelming presence of both electronic and physical evidence in the Western District of Washington and none to speak of comparatively in the Northern District of Illinois, this factor weighs in favor of transfer.

### Convenience of the Parties

In evaluating the convenience to the parties of litigating in one district versus another, a district court considers the parties' "respective residences and their ability to bear the expenses of litigating in a particular forum." *Hanley v. Omarc, Inc.*, 6 F. Supp. 2d 770, 776 (N.D. Ill. 1998) (citation omitted). The convenience of the parties is less important than the convenience of non-party witnesses because party witnesses are expected to appear voluntarily. *Moore*, 487 F. Supp. 2d at 1007-08.

In this case, Boeing has a presence both in Chicago and Seattle. The Boeing employees who were in charge of the RFID program are based in Seattle. Boeing maintains that proceedings in Seattle would be less disruptive to the Seattle-based employees' work schedules than a trial held in Chicago. (Def.'s Mot. at 10.) However, it is possible that Boeing executives located in Chicago might have to fly to Seattle and consequently face similar inconveniences. Craik is a resident of Canada, and it does not appear that Chicago would be more convenient than Seattle. Craik argues that Chicago is more convenient for him because his attorneys are based here. However, the location of a plaintiff's counsel is not persuasive for purposes of this factor. *See Amorose v. C.H. Robinson Worldwide, Inc.*, 521 F. Supp. 2d 731, 736 (N.D. Ill. 2007). Craik offers no other material reason for preferring one district over the other. Therefore, the convenience to the parties favors transfer to the Western District of Washington.

### The Convenience of the Witnesses

Assessing the convenience of the witnesses between venues is the singular most important undertaking in many transfer analyses. *Schwarz v. Nat'l Van Lines, Inc.*, 317 F. Supp. 2d 829, 836 (N.D. Ill. 2004). In making this determination, a district court will "look to the

nature and quality of the witnesses' testimony with respect to the issues of the case," with a keen eye towards those persons who will have to physically leave home in order to appear at and prepare for trial. *Id.* (citation omitted).

The following non-party entities all have persons or other evidence in Seattle or in locations closer to Seattle than to Chicago: Fujitsu, AeroInfo, and Alaska Airlines. These non-parties are expected to serve as key witnesses and would unquestionably incur more travel expenses by appearing in Chicago versus Seattle. As such, this is a central measure of convenience to non-party witnesses. *See Spherion Corp. v. Cincinnati Fin. Corp.*, 183 F. Supp. 2d 1052, 1058 (N.D. Ill. 2002) (describing additional travel distance, expenses, and time as a distinct inconvenience to witnesses, regardless of their personal willingness to travel). Although the parties disagree whether, as a subsidiary of Boeing, AeroInfo should be treated as a party or non-party witness, in either case, AeroInfo's convenience weighs in favor of transfer.

Craik attempts to mitigate the greater convenience of Seattle by claiming that there is ambiguity over the identities of Fujitsu witnesses and the predicted content of their testimonies. However, Boeing has provided descriptions in its briefs and submitted the numerous exhibits that demonstrates Seattle would be more convenient for these witnesses.

In light of the foregoing discussion, it is evident that the second statutory factor of the convenience of the parties and the witnesses clearly favors transfer.

*Interest of Justice*

The final factor to consider is whether transferring a matter to another district will better serve the interest of justice. The emphasis is on the efficiency of the court system and the administration of justice, not the personal or private concerns of the litigants and their trial

10

preparation. *Amoco Oil*, 90 F. Supp. 2d at 961.  To determine which venue will better serve the interest of justice, a district court will contemplate the following:  (1) the speed at which a case will proceed to trial or disposition, (2) the court's familiarity with the applicable law, and (3) the desire to have the dispute resolved in a particular forum.  *Barnes v. Rollins Dedicated Carriage Servs.*, 976 F. Supp. 767, 769 (N.D. Ill. 1997).

Speed to Resolution

Speediness is indicative of judicial economy, which may be measured by the median length of time from filing to disposition on the merits or the median time from filing to trial. *Schwarz*, 317 F. Supp. 2d at 837.  The Western District of Washington is the less congested and faster court, including, notably, a calculation illustrating that this matter would likely be tried nearly ten (10) months sooner should it be transferred.  Craik argues that the Northern District of Illinois can and likely will dispose of this case faster than the Western District of Washington solely because of the Patent Case Pilot Program and the special resources that flow to the Northern District judges.  In support, Craik cites to a statistic that up to one-third of cases in the pilot program are closed faster than other civil cases, which Boeing refutes with its own statistic that demonstrates less congestion for patent cases in the Western District of Washington.

Judicial economy is important, but it is usually not dispositive alone in a transfer analysis. The Northern District of Illinois court is a far busier district, located in the third largest city in the country, compared to the district court in the lesser-populated Pacific Northwest.  Therefore, this factor weighs slightly in favor of transfer.

Familiarity With the Applicable Law

In some instances, a transferee court's lack of familiarity with the applicable law of a particular lawsuit can compromise judicial efficiency and thus sink the chances of a successful transfer motion. This case is not an example of such an instance, for "relative familiarity with the applicable law is not an issue in a patent infringement case, as the applicable law is the same nationwide." *Rabbit Tanaka Corp. USA v. Paradies Shops, Inc.*, 598 F. Supp. 2d 836, 841 (N.D. Ill. 2009). Both the Northern District of Illinois and the Western District of Washington have adopted the Local Patent Rules.

Craik argues that the Patent Case Pilot Program makes the Northern District of Illinois a better forum for a patent infringement suit. The pilot program involves fourteen federal district courts, including the Northern District of Illinois but not the Western District of Washington. However, Craik misunderstands the underlying purpose and function of the pilot program. Courts in the district have explained that:

> [T]he program does not necessarily enhance the patent expertise of the participating districts vis-à-vis other districts. Instead, it enhances the patent expertise of participating judges *within* a district vis-à-vis other judges in the same district. Moreover, if the program is made permanent, Congress will likely extend it to all districts, rather than leaving some districts in the program and creating the impression that they are specialty patent courts.

*Lewis*, 841 F. Supp. 2d at 1056 (emphasis in original) (citation omitted). Furthermore, judges in both districts handled a comparable number of patent cases over the span of a five-year period from January 2008 to January 2013: fifty patent cases per judge in the Northern District of Illinois versus forty patent cases per judge in the Western District of Washington. Consequently, this is a neutral factor.

<u>Desirability of Resolving the Controversy in Each Locale</u>

Lastly, the interest of justice is better served when a forum contains a community that has a strong desire to resolve a particular dispute and that has an invested stake in the matter such that the venue is "closer to the action." *Hanley*, 6 F. Supp. 2d at 777 (internal quotation marks and citations omitted).  The Western District of Washington has a greater interest in hearing and resolving this matter because it was in Seattle where much of the core of this dispute formed. The source of Craik's patent infringement claim is based on testing and related activities at Boeing's offices in Seattle, not Chicago.  Boeing points out that twenty members of Boeing's RFID program team who live and work in Seattle will all be directly and strongly impacted by the adjudication of this lawsuit.  This is persuasive in determining that the Western District of Washington is the venue with more at stake and is closer to the action.  Craik has not rebutted this beyond arguing that Chicago is home to Boeing's global headquarters and Boeing's corporate management.  Thus, this factor thus weighs in favor of transfer.

Overall, based on the previous three components of judicial economy, the interest of justice would be better served by transferring this matter to the Western District of Washington.

## CONCLUSION

Boeing has met its burden of showing that transfer to the Western District of Washington is clearly more convenient for the parties and the witnesses and is in the interest of justice. Consequently, Boeing's Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) [20] is granted. This case is transferred to the United States District Court for the Western District of Washington.

Date: August 15, 2013

JOHN W. DARRAH
United States District Court Judge